UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMIKA HARTLEY-DANIELS,

    *Plaintiff*,

v.                                                              CASE NO. 15-10093

T. BONNEE, and                                  DISTRICT JUDGE JOHN CORBETT O'MEARA
MILLICENT WARREN,                      MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendants*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**

For the reasons stated below, I recommend that:

1. Defendant Bonnee's motion to dismiss (Doc. 18) be **GRANTED**, and

2. Defendant Warren's motion to dismiss (Doc. 27) be **GRANTED.**

**II.**    **REPORT**

    **A.**    **Introduction and Procedural History**

This case was referred to Magistrate Judge Patricia T. Morris, *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3), for resolution of all pretrial matters on February 20, 2015. (Doc. 5.) Plaintiff is a *pro se* prisoner currently incarcerated at Women's Huron Valley Correctional Facility ("WHV") in Ypsilanti, Michigan. The events that gave rise to the allegations in the Complaint occurred while Plaintiff was incarcerated at WHV.

Plaintiff's Complaint alleges that she was held in temporary segregation for more than seven days in violation of Michigan Department of Corrections ("MDOC") policy and in contravention of the Fifth and Fourteenth Amendments to the Constitution. (Pl.'s Compl. Doc.

1, at 2-3.) On June 5, 2013, Defendant Bonnee searched Plaintiff and found five sticks of gum, which is contraband because it can be used to jam security locks. (*Id.* at 2.) Defendant Bonnee wrote a Notice of Intent to Classify to Administrative Segregation. (*Id.* at 2.) Thereafter Plaintiff was placed in "temporary segregation status pending investigation," i.e., solitary confinement. (*Id.*) On June 17, 2013, Plaintiff filed a Step I grievance asserting that WHV operating procedure had been violated because she "had been classified to temporary segregation fourteen calendar days which was eight (8) business days without a hearing." (*Id.* at 2-3.)

Plaintiff alleges that WHV-OP-04.05.120 provides that a "[p]risoner may not be confined in temporary segregation for more than 7 business days without a hearing." It further states "The warden must notify the RPA whenever a Notice of Intent to Classify to Administrative Segregation does not receive a final hearing decision within seven (7) business days." (*Id.* at 2.)

On July 11, 2013, Plaintiff received a response stating that the matter was under investigation. (*Id.* at 3.) On August 6, 2013, Plaintiff filed a Step II grievance alleging that the "matter has yet to be thoroughly investigated. MDOC policy was violated as Plaintiff was held in temporary segregation for more than 7 business days. Staff was made aware of this and still held Plaintiff for 6 additional days. This affected Plaintiff mentally and physically and it still affects Plaintiff today in knowing that this administration continues to get away w/ violating policy." (*Id.*) Defendant Warren denied the Step II grievance on August 15, 2013, stating that the Step I response was appropriate. (*Id.*) Thereafter, Plaintiff filed a Step III appeal stating that she "was never given a valid reason as to why the Administration fail [isc] to release her from seg[regation]. Plaintiff was forced to be in segregation for 15 days without hygiene items, legal

work access, no access to her family, [and] her property was lost by staff, etc. This caused Plaintiff mental anguish, who felt humiliated and degraded. WHV Administration rarely adheres to policy and need to be investigated." (*Id.*) The Step II decision was upheld on appeal. (*Id.*) Thereafter, Plaintiff filed the instant complaint under 42 U.S.C. § 1983 alleging that she had been deprived of due process of law under the Fifth and Fourteenth Amendments to the Constitution. (*Id.*) Plaintiff seeks monetary and punitive damages due to emotional and mental anguish in the amount of $5,000 as well as the cost of additional mental health counseling or therapy. (*Id.*)

On November 2, 2015, Defendant Bonnee moved to dismiss, (Doc. 18) and Plaintiff responded. (Doc. 20.) On March 7, 2016, Defendant Warren moved to dismiss, (Doc. 27) and Plaintiff responded. (Doc. 29.). Accordingly, these two motions (Doc. 18 & Doc. 27) are ready for report and recommendation without oral argument under Local Rule 7.1. Both Defendants seek to dismiss Plaintiff's claims on grounds of qualified immunity. Since I find that this is case dispositive I need not address Defendant Warren's additional argument to dismiss for failure to state a claim.

  A.  **Motion to Dismiss Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted . . . ." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be

3

dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action . . . ." *Id.* When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

### B. Qualified Immunity Standard

Qualified immunity may be considered via a motion to dismiss. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) ("A qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial."). Using the motion to dismiss standards, the court must assume all of Plaintiff's allegations are true and determine whether, as averred, any constitutional violation occurred. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 325 (6th Cir. 2013); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

The analysis of a qualified immunity claim involves three inquiries:

> (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has

offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). Courts are no longer required to address these inquiries sequentially; instead a court may use its sound discretion to determine which of the prongs of the qualified immunity analysis should be considered first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

### C. Law & Analysis

Defendants' allege that they are entitled to qualified immunity under the second inquiry. Thus the issue here is whether the conduct averred in Plaintiff's complaint—placement in temporary segregation for fifteen days without a hearing—violates "a clearly established constitutional right of which a reasonable person would have known." *Radvansky*, 395 F.3d at 302.

In asking this question the Court is guided by a number of principles set forth in the large body of caselaw addressing this issue. The right violated cannot simply be a general prohibition, but rather "must have been clearly established in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"To find that a clearly established right exists, the district court must find binding precedent by the Supreme Court, [the Sixth Circuit], the highest court in the state in which the action arose, or itself, so holding." *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994); *see also Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007) ("Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary.") However, factually similar precedent is not necessary for a right to be clearly established. *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005). "The determinative issue is whether the officer had 'fair warning that the conduct deprived [the plaintiff] of a constitutional right.'" *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Thus, immunity attaches "if officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights." *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992).

In the present case, even assuming that Plaintiff is correct and a Michigan administrative regulation creates a requirement that a hearing must be held within seven days of placement in temporary segregation, the regulation itself does not create a clearly established right even if it incorporates "language of an unmistakably mandatory character." *Sandin v. Conner*, 515 U.S. 472, 480 (1995). The United States Supreme Court held that a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486-87.

Both the Supreme Court and the United State Court of Appeals for the Sixth Circuit have held that initial placement in segregation does not constitute "atypical, or significant

6

deprivation in which a state might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472 (1995), *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). In determining whether a liberty interest has been implicated the Court must look at "the nature and duration of an inmate's segregation." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Although the Court understands Plaintiff's plight and recognizes that she views her treatment as unduly harsh, given the fact that she was placed in temporary segregation without a hearing for fifteen days for possessing gum, confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). The Sixth Circuit has upheld placement in segregation for far longer periods of time. *Joseph*, 410 Fed. App'x at 868 (61 days); *Baker*, 155 F.3d at 812 (two and one-half years); *Mackey*, 111 F.3d at 461 (117 days). Only in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to *indefinite* administrative segregation" has the Sixth Circuit recognized an atypical and significant hardship. *Joseph v. Curtin*, 410 Fed. App'x 865, 868 (6th Cir. 2010) The Sixth Circuit has also rejected an argument that a prisoner was denied due process because the prisoner was not given a hearing prior to placement in administrative segregation. *Joseph*, 410 Fed. App'x at 868.

In each of the cases cited above the prisoner was placed in segregation for reasons that appear more substantial than the possession of gum. *See Joseph*, 410 Fed. App'x at 866 (receipt of two major misconduct tickets); *Baker*, 155 F.3d at 812 (investigation of participation in violent conduct in prison); *Mackey*, 111 F.3d at 461 (scarcity of prison beds);

7

*Rimmer-Bey v. Brown*, 62 F.3d at 790 (major prison misconduct, conspiracy to commit assault and battery). However, the Court will evaluate only the conditions and duration rather than the reasons for Plaintiff's confinement. The Supreme Court shifted the focus of a liberty interest inquiry from the language of a particular regulation to the nature of the deprivation to incentivize States to codify prison management procedures and to avoid federal court involvement in the day-to-day management of prisons. *Sandin*, 515 U.S. at 481-82. An inquiry into whether the prison had sufficient justification to confine Plaintiff for fifteen-days because she was in possession of gum would defeat both of those purposes.

Thus the presiding precedent appears to foreclose any argument that a prisoner has a constitutionally protected interest in avoiding an arbitrary fifteen-day confinement in temporary segregation. Plaintiff has not alleged sufficient facts to conclude that the nature of her confinement was atypical or created a significant hardship in relation to the ordinary incidents of prison life. Nor has she alleged that that the temporary segregation impacted the duration of her sentence. Thus I suggest that Defendants are entitled to qualified immunity.

### D.     Conclusion

For all the reasons stated above, I recommend that Defendants' motions to dismiss (Docs. 18, 27) be granted.

## III.    REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver

of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 30, 2016                     S/ PATRICIA T. MORRIS
                                        Patricia T. Morris
                                        United States Magistrate Judge


### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Tamika Hartley-Daniels 233236 at Huron Valley Complex-Womens, 3201 Bemis Road, Ypsilanti, MI 48197.

Date: June 30, 2016                     By s/Kristen Krawczyk
                                        Case Manager to Magistrate Judge Morris